***********
Upon review of the competent evidence of record with reference to the errors assigned, and finding no good grounds to receive further evidence or to rehear the parties or their representatives, the Full Commission upon reconsideration of the evidence modifies in part the Opinion and Award of the Deputy Commissioner.
 ***********
The Full Commission finds as fact and concludes as matters of law the following which were entered into by the parties in a Pre-Trial Agreement and at the hearing before the Deputy Commissioner as:
 STIPULATIONS
1. The parties are subject to the North Carolina Workers' Compensation Act.
2. An employee-employer relationship existed between the named employee and named employer.
3. The carrier liable on the risk is correctly named above.
4. The employee's average weekly wage is $400.80 per week.
5. The employee sustained an injury on or about June 10, 2001, with the exact date to be determined by the Industrial Commission.
6. The injury/disease on or about June 10, 2001 arose out of and in the course of employment and is compensable.
7. The parties stipulated into evidence as Stipulated Exhibit #1, Pre-Trial Agreement as modified and initialed by the parties.
8. The parties stipulated into evidence as Stipulated Exhibit #2, medical records.
9. The parties stipulated into evidence as Stipulated Exhibit #3, packet of documents including I.C. Forms, discovery documents, and Plaintiff's recorded statements.
10. The parties stipulated into evidence as Stipulated Exhibit #4, videotape, depicting various jobs that Plaintiff performed with Defendant-Employer prior to and following June 10, 2001.
 ***********
Based on the foregoing stipulations and the evidence presented, the Full Commission makes the following:
 FINDINGS OF FACT
1. At the time of the hearing before the Deputy Commissioner, plaintiff was 47 years old, and had obtained her GED. Plaintiff began working at Rubbermaid in June of 1987 as a packer, which required her to take brushes off a machine, assemble a box, and pack the box with brushes. Later, plaintiff began working as a machine operator, and over time she alternated between working as a packer and a machine operator.
2. On February 26, 2001, plaintiff slipped on some plastic chips on the floor and fell onto her back. She continued to work and did not seek medical treatment for any condition she attributed to this fall until December 2002, over 21 months later. Plaintiff filed a Form 18 Notice of Accident on November 21, 2002. I.C. File No. 313747 was assigned to this claim. Defendant denied this claim.
3. Beryl Simms, plaintiff's supervisor, testified that she recalled plaintiff reporting that she had slipped on some trash on February 26, 2001, but no incident report was completed because plaintiff indicated she was not injured. Plaintiff continued to perform her regular job.
4. On June 10, 2001, plaintiff sustained an injury to her shoulder. She was assembling parts and felt a sharp pain shooting up her right arm into her shoulder. Plaintiff reported the injury to her supervisor, Ree Williams. Defendant eventually accepted this claim as compensable. Plaintiff saw the company physician on June 23, 2001. He diagnosed plaintiff with right shoulder pain and injected her with Kenalog. Between June 10, 2001 and June 30, 2001, plaintiff performed light packing.
5. When plaintiff saw Dr. Klein on June 23, 2001, she did not mention the June 10, 2001 injury, which is the subject of I.C. File No. 191624. Dr. Klein testified that he did not begin treating plaintiff for the June 10, 2001 injury until July 2001 or August 2001. Plaintiff told Dr. Klein that on the evening of June 22, 2001, she was running a brush machine and began to have soreness and numbness in her hands. Plaintiff also had complaints of shoulder pain, which had been ongoing for a period of approximately two weeks. Plaintiff was diagnosed with right shoulder pain and possible arthritis.
6. Plaintiff returned to Dr. Klein on June 28, 2001, with complaints of continued right shoulder pain and numbness in the fourth and fifth digits of the right hand. Dr. Klein opined that plaintiff had arthritis and was limited as to what she could do. Dr. Klein further stated that any repetitive activity would have an effect on plaintiff's arthritis and that she would not do well with rigorous repetitive actions.
7. Dr. Klein referred plaintiff to Dr. Edward L. Treadwell, a rheumatologist, for treatment of her arthritis. Dr. Treadwell first saw plaintiff on October 26, 2001. Plaintiff presented with pain in her right shoulder and hands. During this initial visit, plaintiff underwent a multitude of tests including x-rays of the lumbar spine, cervical spine, hands and feet. All of these x-rays came back as normal. In addition, many tests were taken to determine whether plaintiff had any inflammation or auto-immune deficiencies. The tests results were normal.
8. Dr. Treadwell next saw plaintiff on December 3, 2001. At that time, plaintiff indicated that she had injured herself at work while pushing a mop in June 2001. Dr. Treadwell testified that plaintiff did not mention operating any type of machine when she was injured. On examination, plaintiff was diagnosed with right-sided myofascial pain syndrome and tendonitis. Dr. Treadwell further testified that plaintiff did have some arthritis in her back; however, the arthritis in plaintiff's back did not contribute to her problems. At that time, Dr. Treadwell continued plaintiff on light duty work.
9. Plaintiff returned to Dr. Treadwell on January 9, 2002 for examination. Dr. Treadwell noted that plaintiff had not had a great deal of change and that her symptoms had not changed. Dr. Treadwell testified that he would limit plaintiff's work to no reaching overhead and no pushing or pulling. Dr. Treadwell further indicated that plaintiff would have restrictions on her neck movement and that she could not work on an assembly line. Dr. Treadwell opined that plaintiff could lift objects weighing one pound or less, could make boxes and was capable of sweeping floors.
10. Plaintiff saw Dr. Treadwell on June 4, 2002. Dr. Treadwell testified that plaintiff's condition had remained stable. She was still in pain but did have a normal neurological exam. Plaintiff was diagnosed with right myofacial pain syndrome, which was most likely due to a muscle strain problem with the neck. At that time, Dr. Treadwell gave plaintiff an injection at the trapezius and scapular muscles. Plaintiff was taken out of work from June 4, 2002 to June 6, 2002.
11. On June 21, 2002, plaintiff returned to Dr. Treadwell. She seemed to have improved a little bit. Dr. Treadwell diagnosed plaintiff with fibromyalgia.
12. Dr. Treadwell opined that plaintiff's fibromyalgia was related to her injuries in February 2001 and June 2001. Dr. Treadwell's opinion was primarily based on his reasoning that plaintiff had no problems before the injury and had problems afterwards. In an October 21, 2002 letter, Dr. Treadwell indicated that plaintiff had reached maximum medical improvement and noted that her muscle pain may be with her for an indefinite amount of time. He diagnosed plaintiff with mild osteoarthritis, early degenerative arthritis in her fingers and hands, and further opined that plaintiff's initial pain in her shoulder most likely came from her on the job injury. He assigned a 5% permanent partial impairment rating to plaintiff's shoulder.
13. At his deposition, Dr. Treadwell increased plaintiff's rating to 20% to the right upper extremity. However, Dr. Treadwell could not offer any testimony as to how such an increase was justified under the North Carolina Industrial Commission Ratings guidelines.
14. On January 28, 2002, plaintiff presented to Dr. Phillip Perdue for examination and evaluation. At that time, plaintiff noted a history of an injury to the hands and right shoulder while pushing a broom handle through a machine. Plaintiff had numbness and tingling in her hands. Dr. Perdue testified that plaintiff failed to mention any injury in February 2001, during the entire course of his treatment with her.
15. Dr. Perdue recommended EMG and nerve conduction studies and an MRI of plaintiff's right shoulder. Plaintiff's EMG and nerve conduction studies were normal. In addition, the MRI of plaintiff's right shoulder showed no evidence of a rotator cuff tear and "nothing too significant to her right shoulder." Dr. Perdue gave plaintiff cortisone injections to the right shoulder and recommended a cervical spine exam. Plaintiff was returned to light duty work with restrictions of no lifting/carrying over ten pounds, no pushing or pulling and no lifting above the eye level. Dr. Perdue indicted that plaintiff would be able to lift objects weighing less than one pound, eighty or ninety degrees, and that plaintiff was capable of constructing boxes and sweeping floors.
16. Plaintiff saw Dr. Perdue a final time on July 14, 2003. At that time, plaintiff's condition had not changed. Dr. Perdue indicated that plaintiff would have the same restrictions as she had in March 2002, and that he would expect those restrictions to last for approximately six months.
17. Dr. Klein testified he began treating plaintiff for her alleged injuries of February 2001 on December 2, 2002. Dr. Klein testified that by December 2002, he had treated plaintiff on ten or more occasions and she had failed to mention any injury in February 2001 during any of those treatment sessions. Dr. Klein further opined that any cervical spine conditions plaintiff complained about in December 2002 were in no way related to the incident of February 2001; and whatever happened in 2001 would have healed by December 2002. He testified that you could not tell by the physical exam on December 3, 2002 what happened in February 2001.
18. Dr. Barbara Lazio treated plaintiff on one occasion for her cervical spine problems. Plaintiff presented to Dr. Lazio on July 29, 2002 for examination and evaluation. At that time, plaintiff indicated that she was working ten-hour days with continued right shoulder pain in addition to pain in the neck and headaches. Dr. Lazio testified that as of the date of the examination, she did hot have any reason to indicate that plaintiff could not work ten-hour shifts.
19. Dr. Lazio was of the opinion that plaintiff's problem was more of a shoulder/joint problem than a nerve compression problem. Dr. Lazio ordered EMG and nerve conduction studies of the cervical spine. These studies were returned completely normal and showed no active nerve compression. Dr. Lazio opined that plaintiff's cervical spine problem was not contributing to her shoulder pain. Dr. Lazio did not give plaintiff any restrictions on returning to work.
20. Defendant contends that the employment offered to plaintiff following her admittedly compensable injury of June 2001 was suitable. After her injury, plaintiff testified she began labeling toilet bowl brushes, and packing them into boxes. She testified that the brushes do not weigh much, and that an entire box of brushes only weighs about one pound. Plaintiff testified that with any activities that she performs, she experiences some discomfort, but the packing job did not cause any additional discomfort.
21. Plaintiff also was assigned duties consisting of loading blocks into machines and housekeeping duties. A block is the head of a brush. Plaintiff would pick up three to four blocks from a bin next to her station, and place the blocks into the machine. This job sometimes required bending and reaching overhead. Plaintiff loaded blocks about four hours per day. She was no longer loading blocks at the time of the hearing. Beginning in September 2003, plaintiff and another employee were assigned to a housekeeping position, which required them to go behind the machines, and sweep up the plastic chips and dust that had blown off of the machines. Plaintiff testified that this would sometimes bother her right arm, but when that happened, she switched arms and used her left arm more. Plaintiff also testified that her back would also hurt on occasion as a result of bending over.
22. Ms. Sims also described some of the light duty jobs which plaintiff has performed. Ms. Sims agreed that plaintiff did not have to lift anything greater than 15 pounds in performing any of her jobs. Ms. Sims stated that at the time of the hearing before the Deputy Commissioner, plaintiff was working in a housekeeping position, and averaged at least five hours a day sweeping. The remainder of plaintiff's work shift would be completed by packing brushes or assembling boxes. Ms. Sims testified that the job which plaintiff was performing not only entailed loading blocks, but also assembling boxes, and packing brushes into boxes. Ms. Sims testified that the job duties assigned to plaintiff were important to the employer's business, and that someone would have to perform those tasks, whether the job was filled through someone externally or placing someone on that job internally.
23. Based on the greater weight of the evidence, the job duties assigned to plaintiff after her June 10, 2001 injury were suitable.
24. Plaintiff did not sustain an injury as a result of her fall at work on February 26, 2001.
25. Plaintiff sustained an admittedly compensable injury to her shoulder on June 10, 2001 for which she missed less than seven days from work. Plaintiff's injury required medical treatment from a number of providers.
26. Defendant had reasonable grounds for defending this claim.
 ***********
Based upon the foregoing Stipulations and Findings of Fact, the Full Commission makes the following:
 CONCLUSIONS OF LAW
1. Plaintiff sustained an admittedly compensable injury by accident to her shoulder on June 10, 2001. N.C. Gen. Stat. § 97-2(6).
2. Plaintiff has failed to prove by the greater weight of the evidence that she suffered an injury as a result of her accident on February 26, 2001. N.C. Gen. Stat. § 97-2(6).
3. Plaintiff is entitled to have defendants provide all medical treatment necessitated by her June 10, 2001 compensable injury. N.C. Gen. Stat. §97-25.
 ***********
Based upon the foregoing Findings of Fact and Conclusions of Law, the Full Commission enters the following:
 AWARD
1. Plaintiff's claim for workers' compensation benefits for her February 26, 2001 slip and fall at work in I.C. File No. 313747 is DENIED.
2. Plaintiff's claim for indemnity compensation as a result of her June 10, 2001 compensable injury by accident in I.C. File No. 191624 is DENIED.
3. Defendants shall pay all medical expenses incurred or to be incurred by plaintiff as a result of her June 10, 2001 compensable injury, so long as such treatment tends to effect a cure, give relief or lessen plaintiff's period of disability.
4. Defendant shall pay the costs.
This the ___ day of August 2005.
 S/___________________ BERNADINE S. BALLANCE COMMISSIONER
CONCURRING:
 S/_____________ PAMELA T. YOUNG COMMISSIONER
 S/_______________ CHRISTOPHER SCOTT COMMISSIONER